RECEIVED
SDNY PRO SE OFFICE

2023 JUL 10  AM 11: 02

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW

YORK DISVISON

| | | |
|---|---|---|
| Deirdre Newsom, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | |
| | § | Civil Action        -cv- |
| AMERICAN AIRLINES, INC. | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## PLAINTIFF'S ORIGINAL
## <u>COMPLAINT</u>

TO THE HONORABLE COURT:

I, (Pro Se Plaintiff), Deirdre Newsom presents my Complaint for unlawful discrimination in the form of unlawful retaliation, in violation of 42 U.S.C. § 1981.

This complaint was mailed with The United States Postal Service on 07/05/2023, Certified Mail # 7022 3330 0001 5054 8537.

I am requesting that this Original Complaint is filed pursuant to 28 U.S.C § 1916.

## <u>PARTIES</u>

1.      Deirdre Newsom is a Pro Se litigant.

2.      AMERICAN AIRLINES, INC. is a foreign business corporation and may be served with process by serving its registered agent, CORPORATION SERVICE COMPANY, at its registered address, 80 State St., Albany, New York 12207-2543.

## JURISDICTION AND VENUE

3.       Jurisdiction of this Court is invoked pursuant to 25 U.S.C. 1343(a)(4) and 28 U.S.C § 1331.

4.       This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.       Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which the defendant is subject to the court's personal jurisdiction with respect to such action.

## BACKGROUND

**Foreseeable Risk**

6.       Discrimination and retaliation are foreseeable because employers know that discrimination and retaliation are prevalent in the United States.

7.       A report noted by the EEOC states retaliation is the most frequently alleged basis of discrimination in the federal sector and the most common discrimination finding in federal sector cases.[1]

8.       Another report noted by the EEOC states that 75 percent of employees who spoke out against workplace mistreatment faced some form of retaliation.[2]

9.       A report by Ethics & Compliance Initiative finds that retaliation is at an all-time high across all management levels, with top managers and middle managers driving much of this increase in recent years. Between 2013 and 2020, rates of retaliation among top managers and middle managers increased by 62 and 67 percentage points respectively.[3]

**Prevention is the Purpose**

10.       Foreseeability is important because the law is designed to be preventative.

11.       Laws protect our general safety and ensure our rights as citizens against discrimination and retaliation.

---

[1] https://www.eeoc.gov/facts-about-retaliation
[2] https://www.eeoc.gov/select-task-force-study-harassment-workplace#_ftn65 (Citing Lilia M. Cortina & Vicki J. Magley, *Raising Voice, Risking Retaliation: Events Following Interpersonal Mistreatment in the Workplace*, 8:4 J. Occupational Health Psychol. 247, 255 (2003)).
[3] 2021-ECI-GBES-State-Ethics-Compliance-in-Workplace.pdf

12.     Employers may be liable for punitive damages who discriminate in the face of a perceived risk rather than practicing good faith efforts to prevent discrimination.

13.     Corporations that hire qualified human resources (HR) representatives that enforce discrimination and retaliation laws is essential to prevent violations.

14.     Corporations that adequately train managers to follow discrimination and retaliation law is essential to prevent violations.

15.     Corporations that supervise and encourage managers to follow discrimination and retaliation law is essential to prevent violations.

16.     Corporations that prevent any form of discrimination or retaliate against persons who report discrimination is essential to prevent fear of retaliation.

17.     Corporations that care about workplace laws that protect us is essential in preventing physical, mental and emotional damage.

**American Airlines, Inc. is a Global Airline**

18.     AMERICAN AIRLINES, INC. operates an extensive international and domestic network with about 6,000 flights per day to nearly 350 destinations in 48 countries.

19.     AMERICAN AIRLINES, INC. employes over 123,000 employees.

20.     AMERICAN AIRLINES, INC. knows that discrimination and retaliation are foreseeable as potential problems in its workplace.

**History of Retaliation**

21.     According to the Department of Labor, A whistleblower investigation initiated on Aug. 2, 2022, by the U.S. Department of Labor's Occupational Safety and Health Administration found American Airlines Inc. retaliated against employees who filed complaints about the illnesses with the company. Flight attendants alleged the airline docked attendance points and discouraged them from reporting work-related injuries and illnesses.[4]

---

[4] https://www.dol.gov/newsroom/releases/osha/osha20230104-1

22.     Federal law protects workers' rights to voice workplace safety and health concerns without the fear of retaliation," said OSHA Area Director Timothy Minor in Fort Worth, Texas. When employers punish employees for doing so, they create a chilling effect that may stop workers from reporting future issues, putting their health and well-being, and that of co-workers, at risk.[4]

23.     "Our investigation found that the flight attendants engaged in protected activities when they reported illnesses related to jet fuel fumes seeping into the aircraft cabin," Minor added. "Workers must feel empowered to inform managers and others about potential hazards that jeopardize workers' safety and health." [4]

24.     Based on the U.S. Department of Labor's Occupational Safety and Health Administration's findings, one can deduce that AMERICAN AIRLINES, INC. has a history of retaliation in the workplace.

**Protected Activity**

25.     I was absent from work from January 17th, 2022 – January 29th, 2022. I requested for that absence to be re-coded under my FMLA (Family Medical Leave Act) case as normal protocol.  Shortly after receiving a voicemail from Flight Service Manager Fahad Ghani stating that my absence would be re-coded as a "courtesy", I emailed Mr. Ghani on January 28th, 2022, asking for clarity on my absence being re-coded as a "courtesy" and not based on FMLA federal law. I also made Flight Service Manager Fahad Ghani aware of my intention to apply for FMLA in a block leave capacity as "intended by law".

**Adverse Action**

26.     On February 24th, 2022, I randomly received an email from Mark Neises with Flight Service Absence and Return Center (ARC) stating a sick verification form or equivalent was received on my behalf covering the dates of February 9th, 2022 – February 23rd, 2022.

27.     On February 26th, 2022, I emailed Mark Neises stating I did not submit a sick verification form and I believed this was done in error. When the sick verification form was not removed from my employee file, I made various members of AMERICAN AIRLINES, INC. management and APFA aware I did not initiate, nor did I consent to such a document. I requested a copy of the document and was not provided with the alleged document.

28.     On February 8th, 2022 – February 13th, 2022, I had paid vacation. I lost my vacation pay because the sick verification form dated February 9th, 2022 – February 23rd, 2022., consequently overlapped with my paid vacation days. I even lost vacation pay for February 8th, 2022, the only day that did not overlap.

29.     March 9th, 2022, I emailed a copy of my Family Medical Leave application requesting a new block-leave starting March 10th, 2022 – September 10th, 2022. I was administratively eligible for Family Medical Leave at the time of the application. The application was substantiated by a qualifying physician who provided the description of the regimen of treatment for my qualifying health condition and other applicable information. The application was denied.

30.     I was forced to take an alternative company leave of absence in lieu of.

31.     On September 5th, 2022, I emailed Attendance Flight Service Manager Raysa Schumacher because I noticed I lost (1) banked point which are positive points awarded to Flight Attendants that can be utilized for attendance. Before I lost a banked point, I accrued a total of 3 banked points at that time, leaving me with 2 banked points remaining.

32.     On September 11th, 2022, After I complained about losing a banked point to Attendance Flight Service Manager Raysa Schumacher, I noticed my 2 banked points remaining were taken away.

33.     On September 30th, 2022, I emailed Flight Attendant Administration because my pay rate reduced without notice from the current contractual rate of $49.76 to the previous year's contractual rate of $45.48.

34.     On October 10th, 2022, I received a statement of benefits notice that confirmed I lost my health insurance benefits.

35.     On October 29th, I was notified to work a reserve trip that breached contractual terms. My report time was scheduled at 5am for a flight that departed at 5:55am. Based on the terms of my employment contact, (1) hour is required from report time to the flight's departure time. I was penalized for not working a trip that was considered illegal.

36.     On February 17th, 2023, I was talking to a Flight Service Manager about personal matters in-person. The Flight Service Manager called the airport police, and I was unlawfully detained and arrested. Airport police stated in video footage that I did not have proper security

clearance to be in Flight Service offices. I was forced to go to a nearby hospital then transported to a psychiatric hospital for about 18 days.

37.     On March 10th, 2023, I received an email from Flight Service Manager Richard Gilder stating my travel privileges were suspended due to an allegation.

38.     On March 22nd, 2023, Flight Service Manager Richard Gilder emailed me stating that my travel privileges remain suspended and that I was suspended from service without pay pending the outcome of an investigation that may result in corrective action up to and including termination.

39.     As of June 2nd, 2023, Flight Service Manger Richard Gilder emailed me stating I was on a suspension with pay, after I was informed my employment was reinstated on April 25th,2023. My June 30th, 2023, pay statement confirms I did not get paid, therefore making this suspension unpaid. I did not receive any further information regarding this suspension.

40.     As of July 4th, 2023, I have a level 2 warning with 7 negative points against my attendance record after engaging in a protected activity.

**Exceptional Performance**

41.     I was hired with AMERICAN AIRLINES, INC. in 2016 for the flight attendant position.

42.     As a Flight Attendant, I report to the Flight Service Department.

43.     We have a labor union known as the Associates of Professional Flight Attendants (APFA).

44.     Before I engaged in protected activity, I accrued a total of 3 positive banked points.

45.     I had a perfect attendance and performance record.

46.     I had no history of disciplinary actions reported to my employee file at the time of engaging in protected activity.

47.     Each time I entered an aircraft, I went above and beyond for our passengers.

48.     My service contributes to AMERICAN AIRLINES, INC. positive customer feedback.

49.     Being a Flight Attendant was my dream job that I took pride in.

**Contacted Management**

50.      On April 6th, 2022, I emailed Flight Service Manager Fahad Ghani, Flight Service Manager Richard Gilder, The Absence and Return Center general email address (ARC LOA) and Sr Analyst of Flight Service Administration Rick Carpenter, pdf attachments of the U.S. Department of Labor fact sheets #28e, #28d, #28f, #28j, #28m(c), #28i and #28h.

51.      On April 20th, 2022, I emailed to Flight Service Managers Fahad Ghani and Richard Gilder:

52.       "Hi, I feel it is important to write this email to share with you how I feel regarding my experience with the ARC (Absence & Return Center). To be completely transparent, I am incredibly stressed and mentally drained. I am not getting clarity on what is going on, cases are being created under my employee # without my consent or knowledge and cases are being denied without explanation. I have been employed with American Airlines for 6 years. For the most part I have a clean record, I stay out of trouble and do my job as expected of me without being afraid to go above and beyond for our passengers. I have truly lost sleep, lost my appetite and have been in a constant depressive state of being every time I have to deal with ARC. The reason for me leave request is to heal but at this time I feel so much worse and it truly is difficult for me to see the light at the end of the tunnel."

53.      On June 23rd, 2022, APFA Health Representative Amber emailed me and copied Vice President Penelope King to the email stating:

54.      Hi, Deirdre, Let me send this over to ARC and see what the FMLA denial was about. You definitely have the eligibility hours. I'll let you know what they say.

55.      On June 30th, 2022, I emailed APFA Health Department Haley Brewer the following:

56.      "Going back and forth on this matter is deteriorating my mental and physical health. I should be using this time-off to heal, yet I am in a more detrimental state mentally and physically then before I applied for FMLA I am requesting for this matter to be fully investigated."

57.      On September 15th, 2022, I emailed APFA President Christian Santana and APFA Vice President Penelope King requesting to file a NOD (Notice of Dispute) regarding the denial of my FMLA case.

58.     On September 16th, 2022, APFA representative Cathy Sharp interjected on the email thread stating I was not administratively eligible for FMLA, therefore me filing a NOD was not needed. Cathy Sharp interfered in the FMLA process, which is prohibited according to FMLA federal laws.

59.     On September 17th, 2022, I asked President Christian Santana for help investigating the denial of my FMLA application because I was administratively eligible for FMLA at the time of my application.

60.     On September 17th, 2022, President Christian Santana stated that it was not the APFA reps nor his duty to help assist me in the investigating and/or appeal process of FMLA and that I should instead contact Human Resources or go directly to the Department of Labor and file a complaint.

61.     On September 17th, 2022, Cathy Sharp emailed me stating that I was past the deadline to file a NOD. That email is now deleted from the email thread. I emailed Flight Service Manager Richard Gilder and Human Resource Senior Manager Matthew Goder on January 27th, 2023, with concerns about company emails I have sent and/or received being deleted and/or removed.

62.     On January 21st, 2023, I emailed Senior Manager, Human Resources Business Partner Matthew Goder the following discrimination and retaliation complaint as summarized:

63.     "Mr. Matthew Goder,

64.     Please be advised this email serves as an official discrimination and retaliation complaint that involves me (Deirdre Newsom 818989) being wrongly and unlawfully discriminated and retaliated against by American Airlines and APFA (Association of Professional Flight Attendants).

65.     I was denied the right to FMLA (Family Medical Leave) without reason or clarity in a reasonable time. I notified flight service manager Fahad Ghani about 1/28/2022 with my intent to apply for FMLA in a block leave capacity. I initially applied for FMLA about 3/9/2022. I made every effort to reach out to various members of management and apfa for clarity on why my application was denied. I was forced to take an alternative leave of absence (MLOA), again without reason or clarity.

66.     After months of calling, faxing and emailing various members of management and/or apfa regarding the denial of my FMLA application, I suffer from extreme emotional and mental distress indefinitely. I wrote in an email to flight service management about 4/20/2022 stating, "It truly is difficult for me to see the light at the end of the tunnel" referring to the stress of me reaching out to management and apfa pertaining to employment matters, just to be turned away continuously. From that point on, matters became progressively worse.

67.     I noticed an additional company approved leave placed on my time keeping in error starting about 2/9/2022 and ending 2/23/2022 without my knowledge or consent. This particular leave of absence directly conflicted with my vacation days on 2/8/2022 - 2/13/2022. I made every effort to dispute this action, expressing I did not initiate or consent to this leave of absence by communicating with various members of management and apfa. As a result, this action was not changed causing me to lose my vacation days and vacation pay without reason or clarity.

68.     I waited months for documentation to be produced regarding the MLOA I did not consent to and I was forced to take. During this time I was continually calling in sick to crew scheduling as I was unable to physically carry out the job functions and duties required of me. The purpose of me calling in sick in advance was to protect operations by giving adequate time for sufficient staffing as needed. During this time I accrued more derogatory mark(s) on my schedule, regardless of me being recognized as an inactive flight attendant (on an unpaid sick leave) at the time the derogatory mark(s) were dated about 4/7/2022. When I later reached out to management to dispute this matter about 9/9/2022, I was denied the opportunity to have this action reversed without reason or clarity.

69.     I was charged with a trip missed about 10/28/2022 after informing various members in crew scheduling, management and/or apfa that I was not giving the appropriate time to report for this particular reserve trip (per contractual agreement). After all of my efforts to dispute this charge, the trip missed remains a derogatory mark on my attendance and performance record without reason or clarity.

70.     I reached out to the apfa president Christian Santana to file a NOD (Notice of dispute) about 9/15/2022 pertaining to the denial of my FMLA application. APFA President Santana denied my request to file a NOD despite the fact I followed FMLA NOD instructions found on both American Airlines intranet and written in our contractual agreement. Those terms clearly states my right to file a NOD with the APFA president who then will file a grievance. Not only did APFA president Santana deny me the opportunity to file a NOD, Mr. Santana blatantly wrote to me via email this is something he does not do. On the same email thread, another member of management and/ or apfa named Cathy Sharp interfered by intentionally trying to stop the process of me initiating a NOD. Mr. Christian Santana ultimately advised me to reach out to American Airlines' Human Resource department and encouraged me to file a complaint directly with The Department of Labor.

71.     My flight service manager Richard Gilder informed me of a mandatory meeting scheduled for us to discuss my absences on 1/24/2023. I made Mr. Gilder aware about 1/17/2023 that I do not feel comfortable discussing absences with management because my personal medical information is relative to that topic. In the past, I have shared personal medical information with the company against my best wishes. When the absence and return center failed to acknowledge and/ or update my file regarding leave of absences status, I begrudgingly shared medical documents/ information with the company from a fear being penalized or subjected to corrective action. That fear ultimately worsened as the word termination was insinuated many times when I challenged, disputed, inquired and asked for help to members of American Airlines and APFA.

72.     Equality under the law is mandatory, I should be able to enjoy the enforcement of our contractual agreement free from fear of retaliation."

73.     On July 3rd, 2023, I emailed Senior Manager, Human Resource Business Partner Matthew Goder, Chief Executive Officer Robert Isom, Vice President, Global People Support Quad Kent and Executive Vice President, Chief People officer Cole Brown the following:

74.     "Mr. Matthew Goder,

75.     I noticed you haven't replied to this urgent matter and I am asking for a response. Robert Isom, Quad Kent and Cole Brown, please respond if Mr. Matthew Goder is unable to respond.

76.      On June 28th 2023, I emailed Mr. Goder asking for clarity on if I am considered an active or inactive employee at this time. Mr. Goder has failed to respond to date.

77.      On April 25th, 2023, my Flight Service Manager Richard Gilder made me aware that the HR team asked him to return me back to service effective immediately and that I was able to pick up trips for the remainder of April 2023 and for the month of May 2023. I noticed I was unable to pick up trips in May due to me being recognized as an inactive employee.

78.      On May 28th, 2023, I contacted a scheduling representative via phone and that representative stated I was inactive and unable to pick up trips regardless of being made to believe otherwise.

79.      On May 29th 2023, Flight Service Base Manager Fashawna Whiteman confirmed at that time I was an inactive employee and have been since January 2023.

80.      On May 30th, 2023, Flight Service Manager Richard Gilder stated that he confirmed with American Airlines Headquarters that my schedule is now active status.

81.      Shortly after on June 2nd 2023, my Flight Service Manager Richard Gilder made me aware I was suspended with pay.

82.      On June 22nd 2023, Mr. Gilder emailed me stating the investigation would be concluded shortly and my suspension would extend to July 1st, 2023.

83.      On July 1st 2023, I emailed Mr. Gilder regarding the status of the suspension and I have yet to receive a response from Mr. Gilder to date. Mr. Gilder affirmed my suspension is paid but there are no pay protected hours listed on my June 30th, 2023, pay statement, making this suspension unpaid.

84.      On June 28th, 2023, I contacted the Payroll Department via phone and email regarding my June 30th, 2023 pay statement. Lead Payroll Operations Representative Richard Coon Jr. made me aware I was an active employee only for payroll purposes, therefore I am being billed an advance recovery payment as normal protocol. I made Mr. Coon aware that I had (zero) working hours and (zero) pay protected hours listed on my June 30th, 2023 pay statement, receiving a net payment of $0.00 for the end of June 2023 contractual month. Mr. Coon affirmed that I owed American Airlines an advance recovery payment regardless, with no exceptions.

85.      I was billed an advance recovery payment for a contractual month that was suspended with pay but I was never paid; making the suspension unpaid, according to my June

30th, 2023, pay statement; but I owe American Airlines an advance recovery payment that Payroll is attempting to recover by way of an advance recovery bill shown on my June 30th, 2023, pay statement; for an advancement that doesn't exist because I was never paid; for a suspension that remains to have little to no clarity as to the reason for the suspension from the outset.

86.     Mr. Coon also insinuated that the Payroll Department is separate from all other departments with separate rules and procedures with little to no room to dispute those rules and procedures.

87.     Am I an inactive employee or active employee is a very important question because it is very conflicting when I am recognized as inactive for the purposes of blocking me from picking up trips; and recognized as active for the purposes of billing me an advance recovery payment regardless of if there is an advancement to recover or not. Not only is it conflicting, I am in a very vulnerable place because I do not know where I stand with American Airlines. This is continuing to cause confusion, financial hardship, grief and trauma."

**Failure To Comply with The Law**

88.     I tried every effort to call, email, inform, update, and provide all applicable information regarding my FMLA case in good faith. Despite my efforts, I was not only turned away, but I was also retaliated against.

89.     According to FMLA eligibility notice, the employer must notify the employee of eligibility to take FMLA leave within five business days. I was informed AMERICAN AIRLINES, INC. was integrating into a new online platform called Absence Tracker designed to apply to and track absences. Although I submitted my FMLA application before the integration of the new platform, I was more than willing to be patient.

90.     On April 20th, 2022, AMERICAN AIRLINES, INC. emailed me requesting that the physician provide additional information including the description of the regime of treatment and prescription medication. AMERICAN AIRLINES, INC. failed to give me the opportunity to cure deficiencies because it was very unclear what additional information was required when the information that was asked for was already provided in the original FMLA application. I made members of management and APFA aware the required information was already submitted.

91.     On November 15th, 2022, (8) months later, I received a letter stating I was denied Family Medical Leave Act for Airline Flight Attendants because the physician did not provide the description of regimen. AMERICAN AIRLINES, INC. wanted additional information that went beyond the scope of the application requirements. My FMLA application was signed by a qualifying physician who stated all applicable information. Consequently, I was forced to take an alternative company-approved Medical Leave of Absence.

92.     On September 5th, 2022, APFA Health Desk Representative Amber emailed me a copy of the Absence and Return Center (ARC) response to APFA Health Representative Hayley stating, "FA Newsom has called ARC in May, June, July, and August regarding this case and the above was explained to her numerous times."

93.     AMERICAN AIRLINES, INC. did not make a good faith attempt to comply with the law. AMERICAN AIRLINES, INC. showed no interest in giving me the opportunity to cure any specific deficiencies but vaguely requested the description of the regimen of treatment including prescription medication, procedures, and in-person evaluation dates MM/DD/YYYY within 12 months as if my initial FMLA application was vacant.

**Hostile Work Environment**

94.     On February 17th, 2023, I entered a Flight Service office wanting to talk with a Flight Service Manager about personal matters in-person.

95.     This Flight Service Manager called airport police which was completely shocking to me. Airport police claimed I was reported for being in a secure area of the airport without proper credentials, despite the fact I wore my proper identification badge credentials visibly on my shirt.

96.     I was blindsided because the Flight Service Manager did not challenge my credentials, but quietly called the airport police.

97.     By calling airport police, the severity of conduct was extreme and unnecessary.

98.     Airport police detained and arrested me. I was forced to go to a nearby hospital and was forced into a psychiatric hospital for 18 days against my free-will.

99.     This type of behavior created both a hostile and abusive work environment.

100.    This type of behavior coupled with prior retaliation claims reported in this Complaint is very difficult for my mental and emotional well-being.

101.    I deemed this conduct unwelcome, unpleasant, and unwanted.

102.    The conduct is especially pervasive.

103.    The conduct was directed towards me, making me the target of retaliation because I engaged in protected activity. Consequently, I was severely and pervasively retaliated against.

104.    The conduct was both physically threatening and humiliating.

105.    The conduct interfered with my mental and emotional well-being indefinitely. The trauma I suffered will make it very difficult for me to perform in the same way that I did before any retaliation occurred.

106.    A reasonable person would have been greatly offended and harmed by this type of behavior.

107.    This behavior and all other retaliation events leading up to this behavior greatly damaged me indefinitely. I suffer from anxiety, loss of enjoyment of life, mental distress, mental anguish, I am constantly fearful, and I feel humiliated among other adverse effects.

**Shocking to the Ordinary Conscious**

108.    A reasonable person of normal sensitivity and emotional makeup would find this type of conduct to be especially shocking to the conscious, severe, and pervasive.

109.    This conduct would affect the work environment of a reasonable person.

110.    A reasonable person would find this conduct extremely humiliating.

111.    A reasonable person would find that this conduct created an extremely hostile and abusive work environment.

112.    This type of conduct would damage the mental and emotional well-being of a reasonable person.

113.    These types of working conditions go beyond all bounds of decency.

114.    Any reasonable person would feel inclined to resign.

115.    This behavior will dissuade a reasonable person from reporting retaliation in the workplace because they would fear mental, emotional, and physical abuse, and a reasonable person would fear potentially losing their job and dignity which creates a chilling effect.

## CAUSES OF ACTION

**Section 1981 Violation**

116.     My claim for recovery under Section 1981 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

117.     A person is entitled to file suit and recover damages under Section 1981 for retaliation for opposing and reporting violations of section 1981.

118.     A person is entitled to file suit and recover damages under Section 1981 for retaliation in connection to engaging in a protected activity.

119.     AMERICAN AIRLINES, INC. violated section 1981 by knowing I was the target of retaliation and failed to take prompt action to prevent it.

120.     AMERICAN AIRLINES, INC. treated me adversely after I opposed and reported unlawful retaliation.

121.     AMERICAN AIRLINES, INC. acted in a severe, pervasive, and irrational manner because I opposed and reported retaliation.

122.     AMERICAN AIRLINES, INC. created a foreseeable and highly significant risk of physical harm by calling airport police creating a hostile and abusive work environment.

123.     AMERICAN AIRLINES, INC. intentionally refused to apply due diligence when verifying my employment, called airport police that resulted in me being falsely imprisoned.

124.     The liability can be either actual or constructive under the *McDonnell Douglas* Framework.

125.     I was a victim of fraud due to a forged sick verification form submitted on my behalf.

126.     AMERICAN AIRLINES, INC. failed to pay me earned vacation pay and other pay as promised.

127.     AMERICAN AIRLINES, INC. denied me the right to contract by way of denying my right to FMLA under Family Medical Leave Act law.

128.     AMERICAN AIRLINES, INC. forced me to take alterative leave of absence against my best wishes.

129.     My earned banked points were taken away.

130.     AMERICAN AIRLINES, INC. decreased my pay rate violating the terms of the employment contractual agreement.

131.     AMERICAN AIRLINES, INC. assessed me with a total of 7 negative points with a level 2 warning intentionally bringing me closer to termination.

132.     AMERICAN AIRLINES, INC. took away my right to health care insurance benefits by canceling my healthcare insurance benefits.

133.     AMERICAN AIRLINES, INC. had me unlawfully arrested that resulted in me being forced to seek medical attention at a nearby hospital and in a psychiatric hospital against my free-will.

134.     AMERICAN AIRLINES, INC. suspended my travel benefits, therefore I couldn't enjoy the travel privileges of my benefits.

135.     AMERICAN AIRLINES, INC. suspended me without pay which is the required adverse action altering the terms privileges of contract.

136.     AMERICAN AIRLINES, INC. investigated me without clarity.

137.     AMERICAN AIRLINES, INC. members of management and/or APFA called airport police authorities with the intent to have me detained was uncommon activity and highly inappropriate that resulted in physical harm.

138.     I was extremely apprehensive in talking to airport police authorities because nothing warranted unlawful behavior on my behalf. I was in fear of imminent harmful contact due to AMERICAN AIRLINES, INC. intentional negligence.

139.     AMERICAN AIRLINES, INC. members of management and/or APFA put me in the position where I was forced to talk to airport police authorities. As a result, my fear and anxiety increased. I recognized I was in imminent harm when airport police authorities threatened to detain me.

140.     AMERICAN AIRLINES, INC. members of management and/or APFA intentionally called airport police authorities to have me detained. As a result of me being detained, I suffered battery by way of direct physical contact.

141.     Assault and battery are severe and pervasive to alter the course of my employment.

142.     AMERICAN AIRLINES, INC. members of management and/or APFA intentionally ordered to have me falsely imprisoned.

143.     Airport police authorities intentionally physically forced me into submission by restricting my hand movement with handcuffs, without probable cause.

144.     I was confined into the closed area of a police vehicle against my free-will and without my consent.

145.     Airport police authorities transported me to a nearby hospital against my free-will in police custody. I was then transported to a psychiatric hospital against my free-will. I remained in the psychiatric hospital against my free-will for about 18 days. I was forced to take unknown substances referred to as medicine orally and by way of forced injection, without my consent. As a result, I suffered irreparable emotional and physical harm.

146.     I am in a constant state of depression.

147.     I am in a constant state of feeling extreme and intense duress.

148.     I was forced to be under the monitor and care of physicians and nurses I did not consent to.

149.     AMERICAN AIRLINES, INC. members of management and APFA created both an abusive and hostile working environment.

150.     The retaliation was severe and pervasive, interfering with the terms and conditions of my employment with AMERICAN AIRLINES, INC.

151.     AMERICAN AIRLINES, INC. members of management and/or APFA violated Federal laws that are strictly prohibited.

152.     AMERICAN AIRLINES, INC. members of management and/or APFA violated the terms and conditions of my employment contract.

153.     Throughout the course of my employment, I have made AMERICAN AIRLINES, INC. members of management and/or APFA aware of the emotional distress I have experienced because of being denied Family Medical Leave due to my personal health condition.

154.     I made reasonable efforts to prevent the retaliation from escalating.

155.     AMERICAN AIRLINES, INC. members of management and/or APFA intentionally displayed extreme and outrageous conduct by carelessly retaliating against me throughout the course of my employment.

156.     AMERICAN AIRLINES, INC. members of management and/or APFA are held to a higher standard and abused their position of power.

157.    AMERICAN AIRLINES, INC. members of management and/or APFA denied me the right to Family Medical Leave as an eligible employee.

158.    AMERICAN AIRLINES, INC. members of management and/or APFA denied me the right to file a notice of dispute regarding the denial of my FMLA.

159.    AMERICAN AIRLINES, INC. members of management and/or APFA withdrew my paid vacation pay without explanation.

160.    AMERICAN AIRLINES, INC. members of management and/or APFA charged me with multiple negative attendance and performance with the intention to terminate me.

161.    AMERICAN AIRLINES, INC. members of management and/or APFA withdrew my health insurance benefits with malice.

162.    AMERICAN AIRLINES, INC. members of management and/or APFA decreased my pay rate with malice.

163.    AMERICAN AIRLINES, INC. members of management and/or APFA unlawfully called airport police authorities to have me detained that resulted in false imprisonment assault and battery.

164.    AMERICAN AIRLINES, INC. members of management and/or APFA intentionally knew that this reckless and extreme conduct would result in the physical and emotional manifestation of pain and suffering, anxiety, trauma, fear, humiliation, loss of sleep, loss of appetite, loss of productivity and vulnerability to name a few.

165.    AMERICAN AIRLINES, INC. members of management and/or APFA egregious conduct goes beyond all bounds of decency that any reasonable person would find to be reckless, extreme, and outrageous. No member of society should have to endure such conduct.

166.    AMERICAN AIRLINES, INC. should have known members of management and APFA were retaliating against me and taken corrective action to prevent the discrimination within its control.

167.    These actions over a year period leading up to and including my suspension without pay by AMERICAN AIRLINES, INC. constitute the required adverse employment action prohibited by section 1981.

168.    Working conditions became so intolerable that a reasonable person in my position would have felt compelled to resign.

169.     The retaliation altered a term, condition, or privilege of my employment at AMERICAN AIRLINES, INC.

170.     AMERICAN AIRLINES, INC. denied me the "right to make" contracts in the United States as required by federal law. *See* 42 U.S.C. § 1981.

171.     AMERICAN AIRLINES, INC. treated me adversely after I opposed and reported unlawful discrimination.

172.     AMERICAN AIRLINES, INC. engaged in material adverse actions against me, that might well dissuade a reasonable person from opposing or reporting the retaliation had they known they would face the adverse actions.

173.     AMERICAN AIRLINES, INC. members of management and/or APFA failed to take my complaints seriously that contributed to my extreme emotional pain and suffering.

174.     AMERICAN AIRLINES, INC. members of management and/or APFA used their resources inappropriately by intentionally choosing to retaliate.

175.     AMERICAN AIRLINES, INC. members of management and APFA participated in retaliation.

176.     AMERICAN AIRLINES, INC. members of management and APFA have a duty to exercise care.

177.     AMERICAN AIRLINES, INC. violated the federal statue by intentionally retaliating against me, and, because of the retaliation I suffered mental and physical damages.

178.     AMERICAN AIRLINES, INC. members of management and APFA intentionally knew I would suffer harm indefinitely by withdrawing my health insurance benefits.

179.     AMERICAN AIRLINES, INC. members of management failed to apply due diligence in verifying my employment with the company that resulted in false imprisonment, assault, and battery.

180.     AMERICAN AIRLINES, INC. participated in contributory negligence.

181.     AMERICAN AIRLINES, INC. is strictly liable for all members of its management and APFA acting within the scope of their employment.

182.     AMERICAN AIRLINES, INC. is strictly liable for all members of management/APFA and liable for failing to train members of management/APFA adequately to prevent retaliation in the workplace.

183.    AMERICAN AIRLINES, INC. knew or should have known of the retaliation but took no prompt remedial action.

184.    AMERICAN AIRLINES, INC. did not take the steps necessary to prevent the retaliation from occurring.

185.    AMERICAN AIRLINES, INC. refused to protect me from retaliation after investigation, instead I became the target of HR, management and APFA adverse actions.

186.    AMERICAN AIRLINES, INC. has written polices created for the purpose of following laws against discrimination.

187.    AMERICAN AIRLINES, INC. knows that written polices do not enforce themselves.

188.    AMERICAN AIRLINES, INC. have a duty to follow federal laws.

189.    AMERICAN AIRLINES. INC. is strictly reliable for all members of management and/or APFA acting under the scope of their employment.

190.    AMERICAN AIRLINES, INC. polices promised to protect employees from retaliation.

191.    AMERICAN AIRLINES, INC. breached its promise to protect me against retaliation.

192.    AMERICAN AIRLINES, INC. did not take the steps necessary to prevent harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment, and developing methods to sensitize all concerned.

**Compensatory Damages and Equitable Relief**

193.    I sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which I am entitled to recovery under my causes of action.

194.    I am requesting Five-Billion Dollars ($5,000,000,000) in compensatory damages.

195.    I am also entitled to declaratory relief that a violation has occurred.

196.    I am also entitled to equitable relief in the form of an injunction against future discrimination or retaliation.

**Exemplary Damages**

197.     I am entitled to receive punitive damages because AMERICAN AIRLINES, INC. engaged in retaliatory practice or retaliatory practices with malice and with reckless indifference to the federally protected rights of an aggrieved individual. AMERICAN AIRLINES, INC. acted willfully and wantonly.

198.     I am requesting Fifty-Billion Dollars ($50,000,000,000) in exemplary damages.

WHEREFORE, I request that Defendant AMERICAN AIRLINES, INC. answer and that I have a final judgment against Defendants for compensatory, declaratory, and equitable relief, and exemplary damages, and any further relief to which I may be entitled.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

_Deirdre Newsom_                    7/5/2023

Deirdre Newsom                    Date

Sworn to before me this.

5th day of July 20 23

(Notary Public)

CHRIS RAMIREZ
Notary Public - State of New York
No. 01RA6227971
Qualified in New York County
My Commission Expires 09/07/2026

(Stamp)                                    (Seal)

CERTIFIED MAIL

7022 3330 0001 5054 8537

U.S. POSTAGE PAID
FCM LG ENV
NEW YORK, NY 10001
JUL 05, 2023
**$7.20**
R2304H108324-47

Retail
10007
RDC 99

Pro se
B.C.

Attn: Clerk of Court
500 Pearl Street, New York,
New York 10007

Deidre Newsom
#293
10 Green Street Unit 4
Woodbridge, NJ 07095

RECEIVED
SDNY PRO SE OFFICE

2023 JUL 10 AM11:0□

RECEIVED
JUL 07 2023
CLERK'S OFFICE
S.D.N.Y.